UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) ) ) | CHAPTER 11 |
| W.R. GRACE & CO., *et al.* | ) ) | CASE NO. 01-01139 (KJC) (Jointly Administered) |
| Debtors | ) ) ) | |
| CONTINENTAL CASUALTY COMPANY and TRANSPORTATION INSURANCE COMPANY, | ) ) ) ) ) | |
| Plaintiffs | ) ) ) | |
| v. | ) ) | ADVERSARY PROCEEDING |
| JEREMY B. CARR, JULIE L. GIFFORD, GLORIA G. HARRIS, JOYCE I. LUNDVALL, EDWARD D. STEFANATZ, FRED O. BACHE, JACK L. JENSEN, MELBA C. WESTON, RUBY R. HAGNER, KERRY L. BEASLEY, WILLIAM G. CORBETT, AMANDA K. FOSS, TAMMY SUE LANG, WILLIAM E. DeSHAZER, JOHNNY G. JELLESED, LORRAINE B. SICHTING, MARTIN H. KREBS, KENNETH B. NEUBAUER, BRENDA L. VINSON, LAURIE A. WALLER, SHIRLINE E. ALMEIDA, IGNACIO C. ALMEIDA, THOMAS F. ERICKSON, RUSSELL S. BARNES, SANDRA L. BARNES, PHYLLIS A. HAUGEN, and DENNIS L. WELCH, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | NO. 15- |
| Defendants | ) ) ) ) | |

**ADVERSARY COMPLAINT**

This is an action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rules 7001(7) and (9) of the Federal Rules of Bankruptcy Procedure. In November 2010, Plaintiffs Continental Casualty Company ("CCC") and Transportation Insurance Company

("Transportation") (collectively the "CNA Companies") entered into a comprehensive settlement agreement with W.R. Grace and its debtor-affiliates ("Grace") in their jointly administered Chapter 11 cases (the "Chapter 11 Case") that was supported by the representatives of both existing and future asbestos personal injury and wrongful death claimants alleging exposure to Grace asbestos.  Pursuant to the settlement agreement, the CNA Companies agreed to contribute substantial sums to the Trust established to resolve such claims in return for protection from liability for such claims under the Asbestos PI Channeling Injunction issued as part of Grace's confirmed Plan of Reorganization ("Plan").  By this action, the CNA Companies seek a declaration that certain asbestos-related personal injury lawsuits commenced against them by Defendants in Montana State Court (the "Montana State Court Actions") violate that Asbestos PI Channeling Injunction.  The CNA Companies are not by this action seeking a determination whether the Montana State Court Actions assert viable claims or are barred on any other grounds under federal or state law.  This action presents a live controversy because the CNA Companies contend that the Montana State Court Actions violate the Asbestos PI Injunction while Defendants contend that they can proceed with their claims in the Montana State Court Actions against the CNA Companies in the face of that Injunction.

## JURISDICTION AND VENUE

1. This adversary proceeding arises under Title 11 of the United States Code and in a case under Title 11.  Consequently, this Court has jurisdiction under 28 U.S.C. § 1334.

2. This case concerns the application and construction of a channeling injunction issued in the Chapter 11 Case pursuant to 11 U.S.C. § 524(g) ("Section 524(g)").  Section 524(g)(2)(A) provides that the District Court that entered such an injunction shall have "exclusive jurisdiction" to determine questions regarding its application and construction.

Because the Asbestos PI Channeling Injunction at issue here was recommended by this Court (the "Bankruptcy Court") and ordered by the United States District Court for the District of Delaware (the "District Court"), exclusive jurisdiction to apply and construe the Asbestos PI Channeling Injunction lies in this District. Moreover, because the District Court, pursuant to 28 U.S.C. § 157(a), has referred cases under Title 11, and any and all proceedings arising under Title 11 or arising in or related to a case under Title 11, for determination by the Bankruptcy Court, this Court has jurisdiction to resolve in the first instance questions concerning the application and construction of the Asbestos PI Channeling Injunction.

3.  Because the District of Delaware is the exclusive forum for questions relating to application and construction of the Asbestos PI Channeling Injunction at issue in this proceeding, venue is proper in this Court. 11 U.S.C. § 524(g)(2)(A). In addition, venue is proper under 28 U.S.C. §§ 1408 and 1409.

**PARTIES**

4.  Plaintiffs CCC and Transportation are insurance companies that, in the past, issued commercial general liability policies, umbrella policies, excess policies, and/or workers' compensation and employer liability policies to Grace. CCC and Transportation, as well as "CNA Insurance Companies," have been named as defendants in the Montana State Court Actions. Plaintiffs are not aware of any entity named "CNA Insurance Companies," although the term has at times been used as a term of art in the Chapter 11 Case to refer collectively to CCC, Transportation and their affiliated or related companies.

5.  Defendants are plaintiffs in the Montana State Court Actions in which the CNA Companies as well as "CNA Insurance Companies" have been named as defendants.

**FACTUAL BACKGROUND**

6. On April 2, 2001, Grace filed voluntary petitions under Chapter 11 of the Bankruptcy Code in this Court due primarily to existing and anticipated future liability from an avalanche of asbestos-related personal injury, wrongful death, and property damage claims filed against it. These claims included, among many others arising from Grace's construction products and nationwide operations, asbestos personal injury and wrongful death claims arising out of its operation of a vermiculite mine, mill and related facilities located in or in the vicinity of Libby, Montana ("the Libby facilities"). The vermiculite mined there was alleged to contain amphibole asbestos.

7. As part of the Chapter 11 Case, the Bankruptcy Court appointed an Official Committee of Personal Injury Claimants ("ACC") composed of experienced asbestos personal injury attorneys to represent the interests of existing claimants with asbestos personal injury and wrongful death claims against Grace. In addition, the Court appointed an experienced Asbestos PI Future Claimants' Representative ("FCR") to represent the interests of future holders of asbestos personal injury and wrongful death claims.

8. In 2008, Grace, the ACC, the FCR, and the Official Committee of Equity Security Holders reached an agreement in principle on the terms for a Plan of Reorganization. That Plan was committed to writing and presented to the Bankruptcy Court on or about February 27, 2009.

9. Following hearings in which all objections were heard, the Plan, with certain amendments, was confirmed by the Bankruptcy Court on January 31, 2011. The Bankruptcy Court's Confirmation Order was subsequently upheld by the District Court and by the United States Court of Appeals for the Third Circuit.

10. The Plan establishes a "W.R. Grace Asbestos PI Trust" ("Asbestos PI Trust") to which all existing and future "Asbestos PI Claims" are channeled for payment.

11. "Asbestos PI Claims" are broadly defined to include all claims against Grace and "Asbestos Protected Parties" (including "Settled Asbestos Insurance Companies") seeking damages for death or personal injury that both (i) are allegedly caused or arise directly or indirectly from acts or omissions of Grace, including Grace operations and products and (ii) are allegedly due to exposure to asbestos from Grace operations (including its Libby operations) or to any asbestos-containing products or materials mined, processed, produced, and distributed by Grace, including vermiculite mined, milled, or processed by Grace at Libby. A "Settled Asbestos Insurance Company" is an insurance company that has entered into a settlement agreement with Grace to the extent that its policies are identified in Exhibit 5 in the Exhibit Book to the Plan.

12. The Asbestos PI Trust was established and confirmed pursuant to Section 524(g). Trust Distribution Procedures ("TDPs") for payments by the Trust to claimants with asbestos-related injuries due to exposure to Grace asbestos or vermiculite were approved by the Bankruptcy Court and upheld by the District Court and by the Third Circuit. The TDPs are designed to ensure that all claimants (including those allegedly exposed in or near Libby) with personal injury and wrongful death claims allegedly caused by exposure to asbestos from Grace's operations or products, including future claimants, are treated fairly and equitably in view of the assets available to the Trust. Such fair and equitable treatment for all claimants is required by Section 524(g)(4)(B)(ii).

13. As part of the Plan, and pursuant to Section 524(g), the District Court issued the "Asbestos PI Channeling Injunction," which enjoins the commencement of suits seeking any

recoveries for "Asbestos PI Claims" against Grace and all Asbestos Protected Parties (including Settled Asbestos Insurance Companies). Asbestos PI Claims are instead channeled for payment to the Asbestos PI Trust, which provides the "sole recourse" for such claims.

14. The Asbestos PI Trust is funded in large part by the settlements reached by Grace with Settled Asbestos Insurance Companies, including the CNA Companies. These insurers agreed to give up coverage defenses for their policies, to also accelerate their obligations under excess policies, and to pay significant amounts to the Asbestos PI Trust in return for protection from claims by persons (like the Defendants here) seeking damages due to exposure to asbestos from Grace's operations or products.

15. The protection afforded to Settled Asbestos Insurance Companies in the Plan is the broadest possible protection provided by Section 524(g). That section authorizes the issuance of an injunction that precludes all asbestos-related suits or claims against a settled insurance company that is "alleged to be directly or indirectly liable for the conduct of, claims against, or demands on the debtor [here, Grace] to the extent such alleged liability … arises by reason of … the [insurance company's] provision of insurance to the debtor …."

16. As authorized by Section 524(g), the Asbestos PI Channeling Injunction entered by the District Court broadly enjoins all actions against Settled Asbestos Insurance Companies, including the CNA Companies, that seek to recover damages for Asbestos PI Claims, including enjoining "commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding … in any forum …."

17. The Asbestos PI Channeling Injunction does not apply to statutory workers' compensation claims for benefits. The claims asserted by Defendants against the CNA Companies in the Montana State Court Actions are not statutory workers' compensation claims.

## THE CNA/GRACE SETTLEMENT AGREEMENT

18.     In 2010, as part of the Grace Chapter 11 Case, and contingent upon the CNA Companies receiving the benefit of the Asbestos PI Channeling Injunction, the CNA Companies entered into a settlement agreement with Grace (the "CNA/Grace Settlement Agreement").  In that agreement, the CNA Companies agreed to pay $84 million to the Asbestos PI Trust to resolve all claims under, based upon or arising out of policies issued to Grace, including all claims based on or arising out of "Asbestos-Related Bodily Injury Claims," which are defined to include all claims (including claims for personal injury and wrongful death) against the CNA Companies due to exposure to asbestos from Grace operations or products (including vermiculite) that arise in whole or in part, directly or indirectly, by reason of the CNA Companies' having provided insurance or insurance services to Grace, including claims based on or arising out of the CNA Companies' alleged undertakings or duties to provide industrial hygiene, medical, or other loss control services; to conduct inspections, sampling, testing, or medical examinations; to provide warnings or educational services, shower facilities, protective clothing or protective equipment; or otherwise to undertake or fail to undertake actions to educate, warn, or protect third parties about or from the dangers of exposure to asbestos or asbestos-containing vermiculite.

19.     On January 22, 2011, the Bankruptcy Court approved the CNA/Grace Settlement Agreement.  That approval was upheld by the District Court on January 30, 2012, and not further appealed.

20.     On January 31, 2011, the Bankruptcy Court issued the Confirmation Order in this proceeding.  That Order listed the CNA Companies as Settled Asbestos Insurance Companies

that are Asbestos Protected Parties protected from Asbestos PI Claims by the Asbestos PI Channeling Injunction recommended by the Bankruptcy Court. The Bankruptcy Court further approved amendments to Exhibit 5 to the Plan so that the confirmed Plan identified all of the policies that were the subject of the CNA/Grace Settlement Agreement.

21. On January 30, 2012, the District Court entered a Judgment Order approving and issuing under Section 524(g) the Asbestos PI Channeling Injunction that the Bankruptcy Court had recommended. The Court of Appeals for the Third Circuit upheld the Asbestos PI Channeling Injunction on appeal.

22. Pursuant to the CNA/Grace Settlement Agreement, the CNA Companies have paid and will continue to pay substantial funds to the Asbestos PI Trust. Pursuant to the Settlement Agreement, the CNA Companies relinquished substantial defenses to coverage under policies issued to Grace and, in addition, accelerated their obligations under several high-level excess policies even though it is not clear whether or when their obligations under those policies might ever be triggered. The CNA Companies did so in order to obtain the finality, provided by the Asbestos PI Channeling Injunction, of their obligations arising from their provision of insurance to Grace, including protection from all Asbestos-Related Bodily Injury Claims, as defined in the CNA/Grace Settlement Agreement that was approved by the Bankruptcy Court and the District Court.

### DEFENDANTS' MONTANA STATE COURT ACTIONS

23. Each Defendant is a plaintiff in the Montana State Court Actions in which CCC, Transportation and "CNA Insurance Companies" are among the named defendants:

- Defendants Jeremy B. Carr, Julie L. Gifford, Gloria G. Harris, Joyce I. Lundvall, and Edward D. Stefanatz filed an action (Cause No. DDV-14-

768) on or about October 3, 2014, in the Montana District Court for the Eighth Judicial District, Cascade County, in which the CNA Companies are named as defendants (complaint attached as Exhibit A);

- Defendants Fred O. Bache, Jack L. Jensen, Melba C. Weston, and Ruby R. Hagner filed an action (Cause No. ADV-14-519) on or about July 1, 2014, in the Montana District Court for the Eighth Judicial District, Cascade County, in which the CNA Companies are named as defendants (complaint attached as Exhibit B);

- Defendants Kerry L. Beasley, William G. Corbett, Amanda K. Foss, and Tammy Sue Lang filed an action (Cause No. DDV-14-520) on or about July 1, 2014, in the Montana District Court for the Eighth Judicial District, Cascade County, in which the CNA Companies are named as defendants (complaint attached as Exhibit C);

- Defendants William E. DeShazer, Johnny G. Jellesed, and Lorraine B. Sichting filed on action (Cause No. DDV-14-518) on or about July 1, 2014, in the Montana District Court for the Eighth Judicial District, Cascade County, in which the CNA Companies are named as defendants (complaint attached as Exhibit D);

- Defendants Martin H. Krebs, Kenneth B. Neubauer, Brenda L. Vinson, and Laurie A. Waller filed an action (Cause No. BDV-14-698) on or about September 5, 2014, in the Montana District Court for the Eighth Judicial District, Cascade County, in which the CNA Companies are named as defendants (complaint attached as Exhibit E);

- Defendants Shirline E. Almeida, Ignacio C. Almeida, and Thomas F. Erickson filed an action (Cause No. BDV-14-919) on or about November 25, 2014, in the Montana District Court for the Eighth Judicial District, Cascade County, in which the CNA Companies are named as defendants (complaint attached as Exhibit F); and

- Defendants Russell S. Barnes, Sandra L. Barnes, Phyllis A. Haugen, and Dennis L. Welch filed an action (Cause No. ADV-14-778) on or about October 7, 2014, in the Montana District Court for the Eighth Judicial District, Cascade County, in which the CNA Companies are named as defendants (complaint attached as Exhibit G).

24. In each of these Montana State Court Actions, the plaintiffs (Defendants herein) allege in conclusory and vague terms that they are or were exposed to asbestos from Grace's operations in Libby due to their status as "Grace and Zonolite mine, mill or processing workers, independent contractors, loggers, homeowners, gardeners, recreators, ball field players, lumber mill workers, railroad workers, housewives/children of Grace workers, or community members of Libby, Montana, or were otherwise distinctly exposed to [Grace] asbestos in unique exposure events …." The Defendants further allege in those actions that, as a result of such exposure to asbestos milled, handled, processed, or distributed by Grace, they "have been diagnosed with an asbestos disease."

25. In the Montana State Court Actions, Defendants allege that the CNA Companies, through either CCC or Transportation (the plaintiffs in this adversary proceeding), were insurers of Grace and that, due to their role as Grace insurers, the CNA Companies "knew … that a hazardous condition existed" at Grace's Libby operations; "undertook to provide industrial

hygiene services for the benefit of Grace employees, their families and the community"; and were negligent "in the inspection of the Grace Libby operations, [and] in failing to report and act upon known hazardous conditions …." Defendants further allege in the Montana State Court Actions that "[a]s a direct and proximate result of the negligence of CNA, Plaintiffs [Defendants herein] have suffered from asbestos related bodily injuries …." from, and arising out of, Grace's asbestos and/or operations.

26. On information and belief, Defendants have filed, or plan to file, claims with the Asbestos PI Trust based on the same alleged injuries, the same alleged exposures to asbestos, and the same alleged conditions that form the bases for their claims against the CNA Companies in the Montana State Court Actions.

27. Defendants are suing the CNA Companies in the Montana State Court Actions because Grace itself cannot be sued, and Defendants are seeking to hold the CNA Companies liable for Grace's wrongdoing and liabilities only because of the CNA Companies' provision of insurance to Grace.

28. Defendants are seeking in the Montana State Court Actions to recover monies from the CNA Companies arising by reason of their provision of insurance to Grace that are in addition to the monies they will receive or have received from the Asbestos PI Trust for the same alleged injuries because they are dissatisfied with the fair and equitable treatment accorded to claimants under the Asbestos PI Trust and wish to obtain more than their fair and equitable share of payments due as the result of Grace's wrongdoing. Defendants seek these additional damages from the CNA Companies even though a substantial portion of any payment that they might receive from the Asbestos PI Trust will come from funds contributed to the Trust by the CNA Companies.

29. Defendants' claims against the CNA Companies in the Montana State Court Actions constitute Asbestos-Related Bodily Injury Claims that were settled and resolved in the CNA/Grace Settlement Agreement that was approved by both the Bankruptcy Court and the District Court.

30. Defendants' claims against the CNA Companies in the Montana State Court Actions constitute Asbestos PI Claims, as defined in the Plan.

31. If Defendants are allowed to proceed against the CNA Companies and if they prevail in the Montana State Court Actions, notwithstanding the Asbestos PI Channeling Injunction, (i) the Asbestos PI Trust will have to indemnify the CNA Companies for any recovery against them, resulting in lesser funds being held by the Trust for distribution to other Asbestos PI Claimants; and (ii) they may recover more than similarly situated claimants from the Asbestos PI Trust.  Furthermore, the result of allowing Settled Asbestos Insurance Companies to be sued for asbestos-related claims arising by reason of their having provided insurance to debtors will be to materially reduce the incentives for insurers to reach agreements in the future with other debtors to settle coverage disputes for substantial sums and accelerate coverage obligations.  All of this is contrary to the primary purposes of Section 524(g) of both ensuring fair and equitable treatment of all asbestos personal injury and wrongful death claimants, both present and future, and of encouraging insurance companies to enter into fair settlements to help fund asbestos PI trusts.

**COUNT I**
**THE MONTANA STATE COURT ACTIONS VIOLATE THE**
**CHANNELING INJUNCTION**

32. The CNA Companies are Settled Asbestos Insurance Companies and thus Asbestos Protected Parties under the confirmed Plan of Reorganization for Grace.

33. The claims asserted by Defendants against the CNA Companies in the Montana State Court Actions are Asbestos PI Claims under the confirmed Plan of Reorganization for Grace.

34. The claims asserted by Defendants against the CNA Companies in the Montana State Court Actions are barred by the Asbestos PI Channeling Injunction ordered by the District Court.

35. A controversy presently exists between the CNA Companies and Defendants as to whether the claims asserted in the Montana State Court Actions are barred by the Asbestos PI Channeling Injunction. Declaratory Relief is necessary and appropriate to resolve this controversy.

WHEREFORE, Continental Casualty Company and Transportation Insurance Company request that this Court issue a judgment declaring that the claims asserted against them in the Montana State Court Actions by Defendants violate the Asbestos PI Channeling Injunction issued in this proceeding, and that the Court provide any further relief that the Court deems necessary and appropriate to enforce the Asbestos PI Channeling Injunction.

Respectfully submitted,

| | |
|---|---|
| FORD MARRIN ESPOSITO WITMEYER & GLESER, L.L.P. | BAYARD, P.A. |
| | */s/ Scott D. Cousins* |
| Elizabeth DeCristofaro (*pro hac vice*) | Scott D. Cousins |
| Wall Street Plaza, 23rd Floor | 222 Delaware Avenue, Suite 900 |
| New York, New York 10005-1875 | P.O. Box 25130 |
| Telephone: (212) 269-4900 | Wilmington, Delaware 19899 |
| Facsimile: (212) 344-4294 | Telephone: (302) 429-4261 |
| | Facsimile: (302) 658-6395 |

        GOODWIN PROCTER LLP
Daniel M. Glosband (*pro hac vice*)
Goodwin Procter LLP
Exchange Place
Boston, Massachusetts 02109
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
--and --
Michael S. Giannotto (*pro hac vice*)
Frederick C. Schafrick (*pro hac vice*)
901 New York Avenue, N.W.
Washington, D.C. 20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444

Dated:  June 8, 2015